# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| YGM Franchise, LLC, | Case No. 2:22-cv-3553-RMG |
|     Plaintiff, | |
| v. | **ORDER** |
| Moylam Wong, Raul Wong, and M & R Wong, LCC, | |
|     Defendants. | |

This matter is before the Court on Plaintiff's motion for an award of attorney fees and costs against Moylan Wong, Raul Wong, and M & R Wong, LLC (hereafter referred to collectively as "the Wongs"). (Dkt. No. 66, 66-4). Plaintiffs request more than $50,000 in fees and costs from litigation involving a franchise dispute. The Wongs have filed a response in opposition, and Plaintiff has filed a reply. (Dkt. Nos. 67, 69). Plaintiff's motion for attorney fees and costs follows an earlier order of this Court granting Plaintiff declaratory and injunctive relief against the Wongs. (Dkt. No. 57).

In the course of reviewing the briefs and supporting documents relating to the motion for an award of attorney fees, the Court has acquired a fuller and far more in depth understanding of this litigation. This has led the Court to conclude that the Court erred in granting Plaintiff's motion for partial summary judgment, and, as explained below, sua sponte vacates its Order of July 1, 2024 pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 57). The Court has further determined, after a full review of the record before the Court, to deny Plaintiff's motion for partial summary judgment and request for declaratory and injunctive relief (Dkt. No. 52).

1

**Factual Background**

In December 2017, the Wongs purchased from Plaintiff a franchise known as "You've Got Maids," which promised franchisees training and promotion of the brand in return for an initial franchise fee and related fees (for the Wongs totaling in excess of $32,000) and ongoing payments to Plaintiff. (Dkt. No. 1-4). The franchise agreement permitted franchisees to terminate the franchise with 90 days notice and delivery of a general release to Plaintiff. (*Id*. at ¶ 13.01.)

A number of franchisees, including the Wongs, provided notice of termination of their franchises. They asserted that Plaintiff had not expended adequate funds to support the brand and that principals of Plaintiff had converted funds that were to be devoted to brand promotion for personal use. (Dkt No. 33 at 9-12). Plaintiff filed suit on October 13, 2022 against seven franchisees, including the Wongs, which had given notice of termination. (Dkt. Nos. 1). Plaintiff alleged that the defendants had not met the notice requirements for termination of the franchises by not providing general releases and were attempting to operate ongoing housecleaning businesses in violation of the franchise agreement's 18-month non-compete provision. The defendants, then jointly represented by one attorney, answered the complaint and denied liability. (Dkt. No. 15).

Plaintiff filed an amended complaint with the answer due on March 15, 2023. (Dkt. No. 16, 18). By this time, the original joint attorney for defendants had withdrawn and other defendants retained new counsel. The Wongs retained no new counsel and went into default on March 15, 2023. A month earlier, the Wongs' son died in a tragic accident and by mid-March 2023 they had closed their housecleaning business. (Dkt. No. 67 at 2). Under normal circumstances, the Wongs would have either been dismissed as parties or Plaintiff would have moved for a default judgment against the Wongs. Under either circumstance, the litigation against the Wongs would have ended.

Instead, Plaintiff continued to litigate against the Wongs for the next two years despite any evidence that they were in fact violating the non-compete provision of the franchise agreement, with the clear expectation that the Wongs would have to pay the attorney fees for this purposeless litigation.

On March 8, 2023, Plaintiff filed a motion for a preliminary injunction. (Dkt. No. 23). This case was then being handled by Judge David Norton. In an order dated April 4, 2023, Judge Norton denied Plaintiff's motion for injunctive relief. Among the reasons referenced by Judge Norton in denying the motion for a preliminary injunction was the evidence that the principals may have improperly converted brand funds for their personal use and that Plaintiff could not show irreparable injury where a franchisee had "no plans to participate in any competing business" and "essentially washed his hands of the housekeeping business." As such, Judge Norton determined that the franchisee "poses no threat to the Plaintiff in the form of competition or otherwise." (Dkt. No. 33 at 8-12, 16-17). Judge Norton further found Plaintiff's claim that it needed an injunction as an example to other franchisees who might wish to unlawfully terminate their franchise "too speculative and categorical." (*Id*. at 17).

The other six franchisees, all represented by counsel, resolved their differences with Plaintiff on terms unknown to the Court. The Wongs, who imprudently ignored the ongoing litigation and without counsel, remained defendants in this litigation. On April 1, 2024, Plaintiff moved for a partial summary judgment against the Wongs. (Dkt. No. 52). The Wongs finally retained counsel and opposed the motion. (Dkt. No. 53). The Court granted Plaintiff's motion for declaratory and injunctive relief, directing the Wongs to deliver a general release to Plaintiff and to refrain from violating the non-compete provision of the franchise agreement. (Dkt. No. 57).

Seven months later, Plaintiff filed a motion for an award of attorney fees and costs, seeking more than $50,000.00 against the Wongs. (Dkt. No. 66, 66-4). The response of the Wongs to the motion for attorney fees and a detailed itemization of the hours expended by Plaintiff in pursuing the Wongs gave this Court a far fuller picture of the abusive nature of this litigation and has now caused the Court to reconsider its prior order granting partial summary judgment.[1]

**Legal Standard**

For a court to grant relief from a final order under Rule 60(b), there must first be a threshold showing that the action is (1) timely; (2) the defendant has a meritorious defense; (3) the prevailing party would not suffer unfair prejudice; and (4) exceptional circumstances. *Wells Fargo v. Bank N.A. v. AMH Roman Two NC LLC*, 859 F.3d 295, 299 (4th Cir. 2017). If a party against whom judgment has been rendered can satisfy the threshold requirements, then the party must satisfy one of the six sections of Rule 60(b) to obtain relief from a judgment. *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993). Rule 60(b)(6), commonly referred to as the "catch-all" clause, authorizes relief from judgment for "any other reason justifying relief" not listed in Rule 60(b)(1)-(5). This section has been described by the Fourth Circuit as "a grand reservoir of equitable power to do justice in a particular case." *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 106 (4th Cir. 1979).

---

[1] A review of Plaintiff's submission of its attorney hours caused the Court to look more deeply into the true nature of this litigation. Among the disturbing aspects of the fee petition included (1) a request for an award for attorney time expended on the motion for preliminary injunction which was denied by Judge Norton (Dkt. No. 66-4 at 10/1/22, 10/2/22, 10/4/22, 10/5/22, 10/8/22, 10/9/22, 10/10/22, 10/13/22/10/25/22, 1/10/23, 1/11/23, and 1/20/23); (2) a request for reimbursement from the Wongs for attorney time involved in the martial dispute between two principals of Plaintiff, Frank and Cynthia Berger (Dkt. No. 66-4 at 7/26/22, 8/5/22, 11/14/22, 11/15/22, 1/1/23, 3/6/23, 3/9/23); and (3) a request for an award for extensive attorney hours handling the motion for partial summary judgment when the same relief could have been obtained with minimal attorney time by simply requesting an entry of default and moving for a default judgment.

**Discussion**

A. <u>Relief from the Order of July 1, 2024</u>:

The Court acquired a more detailed understanding of the true nature of this litigation once it obtained access to the details contained in the petition for attorney fees, the itemized listing of attorney hours, and the Wongs' response. The Court finds that relief under 60(b) is appropriate under these circumstances. The sua sponte action of the Court is taken while the case is still open on its docket and less than one year since the grant of partial summary judgment. As discussed below, the Court finds that the Wongs have a meritorious defense. The Court can identify no injury Plaintiff would suffer from the vacating of the July 1, 2024 order since it had suffered no injury whatsoever from anything the Wongs had done or failed to do. The Court finds that the manifest injustice caused by the entry of the July 1, 2024 order constitutes exceptional circumstances justifying Rule 60(b) relief. Further, the Court draws upon "the grand reservoir of equitable power to do justice in [this] particular case" by granting relief under Rule 60(b)(6). *Compton v. Alton S.S. Co., Inc.*, 608 F.2d at 106. The Court hereby vacates its Order of July 1, 2024 and now reconsiders Plaintiff's motion for partial summary judgment. (Dkt. No. 52).

B. <u>Reconsideration of Plaintiff's Motion for Partial Summary Judgment</u>:

Plaintiff's motion for partial summary judgment ultimately sought injunctive relief to prevent the Wongs from violating the 18-month non-compete agreement. The uncontested evidence in the record is that the Wongs quit the housecleaning business in March 2023 and there is simply no evidence that the Wongs posed any potential injury to Plaintiff that would justify injunctive relief. Indeed, Plaintiff admitted for the first time in its motion for attorney fees that it had suffered no injury from the Wongs. (Dkt. No. 66 at 8 (stating that "there were no claims for

damages as between YGM and the Wong Defendants")). Had the Court been aware of the lack of injury at the time of the request for injunctive relief, such relief would have been denied.

A fair question is why Plaintiff persisted in hounding the Wongs in this litigation for two years after they went into default when Plaintiff had suffered no injury. If Plaintiff actually had some injury that needed to be redressed, all Plaintiff had to do was to take the easy steps to obtain a default judgment. The Court is convinced that this course was not taken because the real purpose of this litigation against the Wongs was to deter other franchisees from attempting to terminate their franchise agreements. Plaintiff's fee petition said as much, stating that an adverse ruling in this case "would have threatened the viability of YGM's franchise system as a whole." (Dkt. No. 66 at 8). Plaintiff wished to make an example of the Wongs, pounding them into submission and impoverishment by a $50,000 fee award so others would not attempt to follow their course. The Court has been to date an unwitting participant in this abusive litigation. That has now ended.

The Court denies Plaintiff's motion for partial summary judgment. (Dkt. No. 52). Plaintiff has no injury and the Wongs have not violated the non-compete section of the franchise agreement. Plaintiff has no basis for its request for declaratory and injunctive relief.

C.  Further action by the Court:

Plaintiff's motion for an award of attorney fees is denied (Dkt. No. 66) as moot. Plaintiff has no further claims against the Wongs that would support the continuation of this litigation. (Dkt. No. 64). This action is dismissed.

## Conclusion

Based on the foregoing, the Court vacates its order of July 1, 2024 (Dkt. No. 57), reconsiders its decision regarding Plaintiff's motion for partial summary judgment (Dkt. No. 52), denies Plaintiff's motion for partial summary judgment (Dkt. No. 52), and dismisses this action.

**AND IT IS SO ORDERED**.

                                                        _s/Richard Mark Gergel_
                                                       Richard Mark Gergel
                                                       United States District Judge

May 30, 2025
Charleston, South Carolina